## Case No. 18,055.

### WORTHINGTON v. PRESTON.

[4 Wash. C. C. 461.] [1]

Circuit Court, E. D. Pennsylvania. Oct. Term, 1824.

FUGITIVE SLAVE—POWER OF MAGISTRATE—CERTIFICATE OF OWNERSHIP—COMMITMENT TO JAIL—ESCAPE—LIABILITY OF JAILER.

1. Under the act respecting fugitives from service, passed February 12, 1793 [1 Stat. 302], the judge or magistrate has no power to

[1] [Originally published from the MSS. of Hon. Bushrod Washington, Associate Justice of the Supreme Court of the United States, under the supervision of Richard Peters, Jr., Esq.]

issue a warrant to arrest the fugitive, or to commit after the examination is over, and the certificate is granted; though in practice the judge commits de die in diem, pending the examination. The whole power is to examine, decide, and grant or refuse the certificate.

2. If after the certificate is granted the owner of the slave delivers him to the gaoler, who receives him, he is not officially liable for an escape, even although the commitment were under a warrant of the examining magistrate.

3. Neither is the gaoler liable for an escape as bailee, if there was no contract to pay him a reward for safe keeping, unless gross negligence be proved.

This was an action on the case for not keeping in safety Tom, a fugitive slave, the property of the plaintiff, who was delivered to him by the plaintiff's agent and attorney, to be safely kept in the gaol at Doylestown. Upon the plea of the general issue, it was proved that the defendant was the clerk or deputy of the sheriff of Bucks county, in which the gaol was, at the time of the transaction which forms the subject of this suit. It was proved by the person who acted under a regular power of attorney from the plaintiff, that on the 19th of September, 1822, he, with the plaintiff's son, seized the said slave in Bucks county, and took him before a state judge, who, after examining witnesses as to the plaintiff's property in Tom, gave to the attorney a certificate for the removal of the slave to the state of Maryland, whence he had before escaped. That he and the son of the plaintiff carried him, the same afternoon, to the gaol at Doylestown, and delivered him to the defendant, who locked him in the gaol yard, which is surrounded by a high wall (nineteen feet high, as proved by another witness), and that the defendant at the same time undertook to keep him safely. Mr. Worthington, the son, deposed to many of the above facts, and that he went with the other witness to the gaol to deliver the slave there, which was done; but that he knows nothing of the agreement of the defendant stated by the other witness, as to the safe keeping of the slave. Two witnesses, one the turnkey of the gaol, proved that the slave was brought by the persons above mentioned, and delivered to him, and that he was conducted by them into the gaol yard. That upon the agent being informed by him that the prisoners were all locked up in the evening, he requested that the slave should not be locked up until he had eaten his supper. That the slave was then left by the turnkey and the agent in the yard, where all the other prisoners were, and the door communicating with it was locked, and so continued till after the escape, which took place, over the wall, whilst the turnkey went to the kitchen to procure the supper; and that the defendant was not present at any time whilst the persons who brought the negro to the gaol were there, nor until after the escape. No proof was given that any reward was to have been given for the safe keeping of the slave.

C. J. Ingersoll, for plaintiff, insisted that the defendant, or deputy of the sheriff, was bound to receive and safe keep the fugitive; and is liable, as in other cases of escape, by virtue of an act of the assembly of this state, passed in 1789, which directs that all sheriffs and gaolers of the state, and their deputies, to whom any person shall be sent or committed by virtue of any legal process issued under the authority of the United States, shall receive such prisoner into his custody, and keep him safely till discharged by due course of law, and shall be subject to the same penalties, and the parties aggrieved entitled to the same remedies against them, as if such prisoner had been committed by virtue of legal process, issued under the authority of the state. See '2 Smith's Laws, 513. But if the defendant be not answerable officially, he is so as a bailee, upon his promise to keep the fugitive safely.

Mr. Binney, for ·defendant, denied the application of the act referred to on the other side, there having been in fact no commitment by the magistrate, nor had he a power to commit, under the act of congress concerning fugitives from service. As to the other ground, he insisted that the weight of evidence proves that the undertaking, whatever it was, was made, not by the defendant, but by the turnkey, for whose acts the defendant, in a case of this kind, is not answerable. But even if it had been made by the defendant yet, as no reward was to have been given for the safe keeping, nothing but gross negligence could charge him, which, in this case, cannot be alleged. 2 Ld. Raym. 913.

WASHINGTON, Circuit Justice (charging jury). If the defendant be liable for the escape which forms the ground of this action, it must be either (1) in his official capacity, or (2) upon a contract of bailment.

1. The first is a question of law, and depends upon the construction of the act of congress respecting fugitives, and the act of assembly of this state, which has been read. The former authorises the owner of a fugitive from service, escaping from one state into another, or his agent, to seize him, and to take him before any federal or state judge, or magistrate of the county, &c., where the seizure is made, and upon proof to the satisfaction of such judge or magistrate that the person so seized doth, under the laws of the state from which he fled, owe service or labour to the person claiming him, it is made the duty of such judge or magistrate to give a certificate thereof to such claimant, or his agent, which is to be a sufficient warrant for removing the fugitive to the state from which he fled. This act confers only a limited authority upon the magistrate to examine into the claim of the alleged owner, and being satisfied on that point, to grant him a certificate to that effect. This is the commencement and termination of his duty.

He has no authority to issue a warrant to apprehend the fugitive in the first instance, or to commit him after the examination is concluded, and the certificate given. Pending the examination, whilst the fugitive is in custodia legis, the judge of this district and myself have always considered ourselves at liberty to commit, from day to day, till the examination is closed, or else the fugitive could not safely be indulged with time to get his witnesses to disprove the claim of the asserted owner, should he have any. An attempt has been made in congress to correct these glaring defects in the act, without which correction the act is found to be practically of little avail; but the attempt has not as yet succeeded. As it now stands, the magistrate had no authority to command the gaoler in this case to receive and safe keep the fugitive, and consequently, it is not a case provided for by the act of assembly of this state, which is confined to commitments under the authority of the United States. But even if the magistrate had been authorized to commit, it would be a conclusive objection to the plaintiff's demand, under this head, that no warrant of commitment was in fact granted.

2. Is the defendant liable as bailee? And the first inquiry under this head is, whether any contract of bailment is proved to have been entered into by the defendant with the plaintiff's agent? Two witnesses, one of them the turnkey, have stated, that at no period, from the time the negro was brought to the gaol to that of the departure of the agent and son of the plaintiff who brought him there, was the defendant present, and that the directions to keep him, and not to lock him up till he had received his supper, were given exclusively to the turnkey. The agent has sworn positively that the promise to keep the man safely was made by the defendant in person. The son, who was present the whole time, knows nothing of the alleged promise by the defendant. You must therefore say, upon the evidence, how this fact is. It is all important to the case of the plaintiff, and the burthen of proving it to your satisfaction lies upon him. But admit the fact to be proved, would the defendant, under all the circumstances of this case, be liable? No reward for the required service was promised, and, according to the doctrine laid down in Coggs v. Bernard [2 Ld. Raym. .909], the bailee is answerable in such a case, only for gross neglect. Now, when a man promises to keep safely property, either animate or inanimate, be the former a rational being or otherwise, he must be free to exercise his own judgment as to the mode, and must depend upon his own vigilance to effect the object. But if the bailor restricts him in these particulars, by prescribing the mode and degree of confinement, the bailee can not be charged with negligence of any kind, much less with gross negligence, if, notwithstanding an honest and strict fulfilment of

the special contract of bailment thus entered into, an escape should happen, or a loss be sustained. Now, in this case, the slave was left in the yard of the gaol, with the knowledge and consent of the agent, and with an order not to lock him up, until he had received his supper. The door communicating with the yard was carefully locked when they left the yard, and the only way by which an escape could be effected, was over the wall. Before the supper could be brought to the negro, he had made good his escape over the wall. How then can the bailee, admitting the defendant to have been such, be chargeable with negligence under circumstances like these? But would he have been liable, even if the order not to lock him up till after supper, had not been given? We think not. The charge of gross negligence could not have been imputed to the bailee, who kept this man in the same place, and with the same precautions, that he kept all the other prisoners under his charge.

Verdict for defendant.